UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |  |
|---|---|---|---|
| IN RE: | ) | CASE No. | 15-30735 (JAM) |
|  | ) |  |  |
| CHARLES J. COYLE, | ) | CHAPTER | 13 |
|  | ) |  |  |
| DEBTOR. | ) | RE: ECF Nos. | 18, 21, 38, 39, 41 |
|  | ) |  |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## **APPEARANCES**

Neil Crane, Esq.                                     Attorney for the Debtor
Law Office of Neil Crane, LLC
2679 Whitney Avenue
Hamden, CT 06518

James D. Hine, II, Esq.                             Attorney for the Creditor
Mulvey, Oliver, Gould & Crotta
2911 Dixwell Avenue
Hamden, CT 06518

## **MEMORANDUM AND ORDER ON**
## **MOTION TO DETERMINE SECURED STATUS OF CLAIM**

### I.     **INTRODUCTION**

In the case of *Nobelman v. American Savings Bank*, 508 U.S. 324, 13 S. Ct. 2106, 124 L.

Ed. 2d 228 (1993), the United States Supreme Court held that Section 1322(b)(2) of the

Bankruptcy Code[1] precludes a debtor from "bifurcating" an undersecured creditor's claim into a

secured and unsecured claim under Section 506(a) when the claim is secured by the debtor's

---

[1] Section 1322(b)(2) is officially cited as 11 U.S.C. § 1332(b)(2). All references to sections of the United States
Bankruptcy Code will hereinafter appear as "Section _____".

principal residence. The Court reasoned that a Section 506(a) bifurcation of an undersecured creditor's claim secured by the debtor's principal residence is an impermissible modification if the debtor's Chapter 13 Plan does not propose to pay the creditor's claim in full.

Most Chapter 13 cases decided after *Nobelman* address the issue of whether the real property securing the creditor's claim was in fact the debtor's principal residence. In the present case, there is no dispute that the real property securing the creditor's claim is the debtor's principal residence and no dispute that the creditor's claim is undersecured. There is also no dispute that the creditor's claim was secured by other collateral in addition to the debtor's principal residence prior to the filing of the debtor's bankruptcy case. The issue in dispute is: at what point in time does a court determine the collateral that secures the creditor's claim—at the time of the loan transaction or at the time the debtor files its bankruptcy case?

The debtor argues that the court should look the time of the loan transaction to determine the collateral that secures the creditor's claim.[2] The creditor argues that the court should look to the date the debtor's case was filed to determine the collateral securing the creditor's claim. For the reasons set forth below, the court concludes that Section 1322(b)(2) does not bar modification of the creditor's claim because it was secured by the debtor's principal residence *and* by other collateral at the time of the loan transaction. Because the court concludes the claim can be modified under Section 1322(b)(2), the claim can also be bifurcated under Section 506(a).

## II.   PROCEDURAL HISTORY

On June 12, 2015, Charles J. Coyle Jr. (the "Debtor"), filed a Motion to Determine the Secured Status of Liens (the "506 Motion", ECF No. 18)[3], in connection with his principal

---

[2] The Debtor also argues that collateral in addition to the debtor's principal residence was in existence when the debtor filed this Chapter 13 case. This issue does not need to be addressed in light of the ruling in this decision.
[3] The Debtor filed a 506 Motion on June 8, 2016 (ECF No. 15). An Amended 506 Motion was filed on June 12, 2016 (ECF No. 18). The court considers ECF No. 18 to be the operative 506 Motion.

2

residence commonly known as 25 Columbus Avenue, East Haven, Connecticut (the "Debtor's principal residence"). The 506 Motion seeks to bifurcate the second mortgage of Prime Bank into a partially secured claim and a partially unsecured claim based upon the value of the Debtor's principal residence. The Debtor's proposed First Amended Chapter 13 Plan also dated June 12, 2015 (the "Chapter 13 Plan", ECF No. 24), treats Prime Bank's second mortgage claim as partially secured and partially unsecured. The Chapter 13 Plan proposes to pay nothing to general unsecured creditors.

Prime Bank objected to the 506 Motion and the Chapter 13 Plan on July 7, 2015 (the "Prime Bank Objection", ECF Nos. 21 and 22). The Prime Bank Objection asserts that its claim cannot be modified pursuant to Section 1322(b)(2) and therefore the Chapter 13 Plan cannot be confirmed unless it proposes to pay its claim in full. On March 3, 2016, a hearing was held on the 506 Motion and the Prime Bank Objection. On March 31, 2016, the parties submitted a joint statement of facts (the "Statement of Facts", ECF No. 38), and subsequently filed briefs. On May 11, 2016, a hearing was held on the 506 Motion and the Prime Bank Objection.

## III.   JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b). The Bankruptcy Court derives its authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A) and (b)(2)(K).

## IV.   FINDINGS OF FACT

The following constitute the court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052. The facts are derived from the Statement of Facts,

3

the record in the Debtor's 2015 Chapter 13 case, and the record in prior bankruptcy cases filed
by the Debtor.

### A.    The Note and the Collateral Securing the Note

1.    On June 24, 1999, as part of a commercial loan transaction, a promissory
note (the "Note"), in the principal amount of $265,000.00 was executed in favor of Prime Bank
by: (i) Coyle Crete, LLC; (ii) Coyle Inc. Paving & Excavating; (iii) Coyle Realty, LLC; (iv)
Charles M. Coyle; and (v) the Debtor (collectively, the "Makers"). *See* Statement of Facts at ¶ 1;
Note, Exhibit A to Debtor's Supplemental Brief, ECF No. 39-1.

2.    The Note provides that the obligations due under the Note "shall be the
joint and several obligation of each and every Maker". *See* Note, Exhibit A to Debtor's
Supplemental Brief, ECF No. 39-1, at p. 4.

3.    The Note also provides that the obligations due to Prime Bank were
secured by the following collateral:

(i) a security interest dated June 24, 1999, on all of the assets of Coyle
Crete, LLC and Coyle Inc. Paving and Excavating (the "Commercial Assets");

(ii) a second mortgage on real property located at 2546 State Street,
Hamden, Connecticut (the "Commercial Property"); and

(iii) a second mortgage on the Debtor's principal residence (collectively,
the "Collateral").

*See* Statement of Facts at ¶ 2; Note at p. 3; Coyle Crete, LLC Security Agreement & UCC-1,
Exhibit B to Debtor's Supplemental Brief, ECF No. 39-2; Coyle Inc., Paving & Excavating
Security Agreement & UCC-1, Exhibit C to Debtor's Supplemental Brief, ECF No. 39-3; Prime
Bank's Second Mortgage, Exhibit D to Debtor's Supplemental Brief, ECF No. 39-4.

4

4.      On June 28, 1999, Prime Bank filed UCC-1 Statements to perfect its

security interests in the Commercial Assets. *See* Statement of Facts at ¶ 3; Coyle Crete, LLC

Security Agreement & UCC-1; Coyle Inc., Paving & Excavating Security Agreement & UCC-1.

5.      The last payment made on the Note was on January 31, 2003. As a result,

the Note went into default. *See* Statement of Facts at ¶ 5.

6.      On November 18, 2003, Prime Bank commenced a foreclosure action in

the Connecticut Superior Court against the Debtor's principal residence in a case entitled *Prime

Bank v. Charles J. Coyle,* Case No. CV-03-0484078-S (the "Foreclosure Action"). *See*

Statement of Facts at ¶ 6.

### B. **The Debtor's bankruptcy cases and the foreclosure actions**

7.      On February 2, 2004, the Debtor filed a petition under Chapter 11 of the

Bankruptcy Code (the "Debtor's Chapter 11 case"), which stayed the Foreclosure Action. *See*

Statement of Facts at ¶ 7. On February 11, 2004, counsel for Prime Bank filed a Notice of

Appearance in the Debtor's Chapter 11 case. *See In re Charles J. Coyle,* Case No. 04-30427,

ECF No. 10.

8.      On February 12, 2004, after the commencement of the Foreclosure Action

and after the Debtor filed his Chapter 11 case, the Commercial Property was sold at a foreclosure

sale. Prime Bank did not receive any proceeds from the sale of the Commercial Property and by

operation of law, its second mortgage against the Commercial Property was foreclosed. *See*

Statement of Facts at ¶ 4.

9.      On June 28, 2004, after the commencement of the Foreclosure Action, the

filing of the Debtor's Chapter 11 case, and the foreclosure sale of the Commercial Property,

Prime Bank did not renew the UCC-1 Statements securing the Commercial Assets. Therefore,

Prime Bank's perfected security interests in the Commercial Assets lapsed. *See* Statement of Facts at ¶ 3.

10.     On February 10, 2005, the Debtor's Chapter 11 case was converted to a Chapter 7 case (the "Debtor's Chapter 7 case"), and on May 24, 2005, the Debtor received a discharge in his Chapter 7 case. *See* Statement of Facts at ¶ 7.

11.     On July 11, 2012, more than seven (7) years after the Debtor was granted a discharge, Prime Bank filed a Motion for Relief from Stay seeking relief to continue to prosecute the Foreclosure Action it commenced in 2003 against the Debtor's principal residence. *See In re Charles J. Coyle*, Case No. 04-30427, ECF No. 171.

12.     On July 31, 2012, an Order Granting Motion for Relief from Stay entered to allow Prime Bank to return to state court to prosecute the Foreclosure Action. *See* Statement of Facts at ¶ 8.

13.     On March 4, 2013, a judgment of foreclosure by sale was entered in the Foreclosure Action. The judgment scheduled a sale of the Debtor's principal residence to be conducted on July 13, 2013. *See* Statement of Facts at ¶ 8; Judgment of Foreclosure dated March 4, 2013, Exhibit B to Prime Bank Objection, ECF No. 21-2.

14.     On July 11, 2013, two days prior to the scheduled foreclosure sale, the Debtor filed a Chapter 13 Petition (the "Debtor's 2013 Chapter 13 case"). *See* Statement of Facts at ¶ 8; Chapter 13 Petition, ECF No. 1 in Case No. 13-31334.

15.     On April 7, 2014, the Debtor's 2013 Chapter 13 case was dismissed for failure to propose a confirmable plan. *See* Statement of Facts at ¶ 8; Dismissal Order, ECF No. 28 in Case No. 13-31334.

16.     On January 26, 2015, Prime Bank obtained a new foreclosure sale date in the Foreclosure Action. *See* Statement of Facts at ¶ 9; Reopened Judgment of Foreclosure dated January 26, 2015, Exhibit C to the Objection to the 506 Motion, ECF No. 21-3.

17.     On May 1, 2015, the day before the scheduled foreclosure sale, the Debtor filed the instant Chapter 13 case (the "Debtor's 2015 Chapter 13 case"). *See* Statement of Facts at ¶ 9; Chapter 13 Petition, ECF No. 1.

18.     At the time the Debtor's 2015 Chapter 13 case was filed:

(i)     Coyle Crete, LLC and Coyle Inc. Paving and Excavating had previously ceased operations and sold all their tangible assets. Both entities were still listed as active with the Connecticut Secretary of State. *See* Statement of Facts at ¶ 11-12.

(ii)    The Debtor's principal residence was the only remaining Collateral from which Prime Bank could satisfy the debt due on the Note. *See* Statement of Facts at ¶ 13.

(iii)   The balance due on the Note was $308,053.81. *See* Statement of Facts at ¶ 14; Proof of Claim 5-1.

(iv)    The balance due on the note secured by the first mortgage on the Debtor's principal residence was $108,148.42, and such interest is prior in right to Prime Bank's interest. *See* Statement of Facts at ¶ 15.

(v)     The fair market value of the Debtor's principal residence was $157,500.00. *See* Statement of Facts at ¶ 16.

## V.   CONCLUSIONS OF LAW

Prime Bank argues that Section 1322(b)(2) prevents modification of its claim because the only *remaining* collateral securing its claim when the Debtor's 2015 Chapter 13 case was filed was the Debtor's principal residence. Because the Debtor and Prime Bank do not agree on the

point in time at which the court should determine the collateral securing Prime Bank's claim, the
court will decide that issue. The court concludes that to determine if modification of Prime
Bank's claim is permissible under Section 1322(b)(2), it must look to the collateral pledged at
the time the Note was executed, not to the collateral that remained on the petition date.

In support of this conclusion, the court reviewed the post-*Nobleman* decision of the
Connecticut Bankruptcy Court in the case of *Adebanjo v. The Dime Savings Bank of New York,
FSB (In re Adebanjo)*, 165 B.R. 98 (Bankr. D. Conn. 1994). The creditor in *Adebanjo* argued
that Section 1322(b)(2) protected its mortgage claim from modification even though its claim
was secured by the debtor's principal residence and two rentals units in which the debtor did not
reside. The court disagreed with the creditor's argument and held that the plain language of
Section 1322(b)(2) protects claims secured *only* by a security interest that is the debtor's
prinicipal residence, not real property that *includes* or *contains* the debtor's principal residence.
*Id.* at 104 (emphasis added). Although the *Adebanjo* decision is instructive, it does not address
the precise issue in this case—whether a creditor's claim can be modified if the ***only remaining
collateral securing its claim*** on the petition date is a security interest in the debtor's principal
residence.

Another post-*Nobleman* Connecticut Bankruptcy Court decision provides additional
guidance on the issue. In the case of *In re Smart*, 214 B.R. 63 (Bankr. D. Conn. 1997), the court
addressed the issue of whether bifurcation of a Chapter 13 debtor's mortgage could occur when
the real property securing the creditor's claim *was not* the debtor's principal residence on the
petition date, but *was* the debtor's principal residence at the time of the loan transaction. *Id*. at
64. Although the primary issue to be decided in *Smart* was the appropriate reference date for
determining the "principal residence" of the debtor, the court held:

[i]n construing Section 1322(b)(2) so as to give maximum effect to the intentions of Congress, this Court allies itself philosophically with those Courts which approach post-*Nobelman* modification issues from the circumstances existing at the time of the subject credit transaction, not the serendipitous or manipulated facts existing as of the date of the filing for the petition.

*Id.* at 68 (citing *In re Brunson*, 201 B.R. 351 (Bankr. W.D.N.Y. 1996)). Thus, *Smart* held that the date of the loan transaction and not the date of the filing controlled whether the creditor's claim secured by the debtor's principal residence was barred from modification under Section 1322(b)(2).

While it is true that the underlying facts of this case are different because there is no dispute that the Debtor's principal residence secures Prime Bank's claim, the rationale in *Smart* can and should be applied to the facts of this case. The "serendipitous" or possibly "manipulated" facts of the instant case are that when the Debtor's 2015 Chapter 13 case was filed, the only remaining collateral from which Prime Bank could possibly satisfy its claim was the Debtor's principal residence. However, in applying the rationale in *Smart*, which looks to "circumstances existing at the time of the subject credit transaction…", the Prime Bank Objection fails and therefore its claim can be modified. *Smart,* at 68.

The conclusion that the Prime Bank Objection fails is further based on the case of *In re Bulson,* 327 B.R. 830 (Bankr. W.D.Mich. 2005). The *Bulson* court concluded that it is "at that point in time that the underwriting decision is made and it is therefore at that point in time that the lender must know whether the loan it is making may be subject to modification in a Chapter 13 proceeding at some later date." *Bulson,* at 846. The *Bulson* court reasoned that the creditor was on notice at the time it entered into the loan transaction of the actual and possible uses of the property. *Id.* The *Bulson* court also explained that the creditor may have even considered such

9

possible scenarios when entering into the loan transaction, and that if the creditor did not, then, perhaps, it should have. *Id.* at 845.

Furthermore, the Third Circuit Court of Appeals case of *Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough),* 461 F.3d 406 (3d Cir. 2006), also supports the court's conclusion. *Scarborough* agrees with *Bulson,* holding that courts should look to the date of the loan transaction in determining whether Section 1322(b)(2) applies. "…[T]he critical moment [in determining whether Section 1322(b)(2) applies] is when the creditor takes a security interest in the collateral". *Id.* at 412. *Scarborough* also cites to the Connecticut Bankruptcy Court case of *Adebanjo,* focusing on the analysis which noted that Section 1322(b)(2) "protects claims secured only by a security interest in real property that *is* the debtor's principal residence, not real property that *includes* or *contains* the debtor's principal residence." *Id.* at 411 (referencing *In re Adebanjo*, 165 B.R. 104 (emphasis in original)). As the *Scarborough* court pointed out, "a creditor who takes *any* interest in personal property forfeits the benefit of § 1322(b)(2), so [too] does a creditor whose claim is secured by *any* real property that is not the debtor's principal residence." *In re Scarborough,* 461 F.3d at 411 (emphasis in original). Although *Scarborough* involved an analysis of Section 1322(b)(2) as applied to a multi-unit dwelling, the holding in *Scarborough* is the same as the holding in *Smart*.

Prime Bank heavily relies on *Rogers v. Eastern Savings Bank, et. al. (In re Rogers)*, 489 B.R. 327 (D. Conn. 2013), in support of the position that its claim cannot be modified. Prime Bank asserts that "the facts of this case are identical to *Rogers* in all material respects." However, Prime Bank's reliance on *Rogers* is misplaced. Not only is the factual scenario different from the present case, but the material question addressed by the *Rogers* court was

whether a debtor could utilize the provisions of Section 1322(b)(2) when that debtor was discharge ineligible due to a previous Chapter 7 discharge. That issue is not present in this case.

Prime Bank also cites to *In re Boisvert,* 156 B.R. 357 (Bankr. D. Mass. 1993), which reached a different result in deciding the relevant time to determine the collateral securing a creditor's claim under Section 1322(b)(2). In *Boisvert*, the court looked to the date of the filing of the petition to determine the collateral that existed, as opposed to looking to the collateral pledged at the time of the loan transaction. This court respectfully declines to follow the reasoning of *Boisvert*, choosing instead to following the reasoning of the *Smart, Bulson*, and *Scarborough* courts.

## V.   CONCLUSION

At the time the Debtor granted Prime Bank a second mortgage on the Debtor's principal residence, the Note was secured by collateral other than only by the Debtor's principal residence. Prime Bank was clearly aware that the Note was secured by collateral other than only by the Debtor's principal residence.

Applying the reasoning of *Adebanjo, Smart, Bulson,* and *Scarborough* to this case, it is undisputed that at the time the Note was executed, Prime Bank's claim was secured by collateral that included, but was not limited to, the second mortgage on the Debtor's principal residence. If loan documents grant a creditor a security interest in the debtor's principal residence as well as security interests in other collateral, the creditor does not qualify for the protection of Section 1322(b)(2), even if the only collateral that remains on the petition date is the debtor's principal residence. Accordingly, it is hereby

**ORDERED** that the Prime Bank Objection is overruled, Prime Bank's claim can be modified under Section 1322(b)(2), and the 506 Motion is granted, and it further

11

**ORDERED** that if Debtor and Prime Bank do not agree on the value of the Debtor's

primary residence for purposes of the 506(a) Motion, an evidentiary hearing on the 506(a)

Motion will be scheduled by the Court.

**IT IS SO ORDERED** at Bridgeport, Connecticut, this 30th day of September, 2016.

Julie A. Manning

Julie A. Manning
Chief United States Bankruptcy Judge